Charles ENGLISH, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1185 S 474.

Supreme Court of Indiana.

Nov. 21, 1985.

Rehearing Denied Jan. 14, 1986.

Mark D. Maynard, Anderson, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

## CRIMINAL PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Fourth District Court of Appeals brought by Appellee-Petitioner, State of Indiana. Appellant-Respondent Charles English, Jr. was found guilty of Robbery, a Class B felony. The Court of Appeals reversed the trial court and held that error had been committed by failing to grant a mistrial after a State's witness made reference to a prior offense committed by English, in violation of the court's order not to do so. *English v. State*, (1985), Ind.App., 481 N.E.2d 413 (Judge Conover dissenting). We disagree with the holding of the Court of Appeals and therefore grant transfer, vacating the opinion of the Court of Appeals and affirming the trial court.

Officer Smith and Officer Delaney were riding together when dispatched to the robbery at the Citgo Gas Station. The officers worked the crime scene in tandem, with Smith handling the preliminary investigation. Smith obtained a description of the robber through eyewitness Reagan and a general description of what had transpired. Reagan stated he knew the robber al-though he could not immediately remember his name. While Smith was outside checking the area more extensively, Officer Delaney stayed with Reagan who called a friend who knew the name of the robber.

Before the State presented its case, the trial judge granted English's motion for an order *in limine*, prohibiting the State's witnesses from commenting upon any prior offenses committed by English. The State's evidence began with the testimony of investigating Officer Smith. Excluding objections and comments by the attorneys, as Officer Smith's testimony is not the basis for this appeal, Officer Smith testified as follows:

"Q. In talking to Mr. Reagan at that time was he ever able to ... inform you as to whether or not he knew anything ... about the identity of this man?

"A. Mr. Reagan told me that he was ... he did know this man who had robbed him; although, at that particular moment he couldn't place the name with it. And about that time I went outside to check the area, uh, more extensively and when I came back inside then Officer Delaney told me that Mr. Reagan had put a name with the suspect; found out a name.

"Q. What name ...?

"A. Charles English.

"A. Officer Delaney told me the name Charles English and I then spoke to Mr. Reagan about this.

"Q. And did he relate how it was that he said he knew that person?

"A. Mr. Reagan told me that he knew this man through past association, being in the gas station and that, uh, Charles English had been in there a number of times before and that's how he knew him.

"Q. Did he relate to you how it was that he initially came up with his name?

"A. Yes, he told me that, uh, he had asked a, uh, friend of his who had also been in the gas station upon occasion

when Mr. English had been in there. He said that....

"Q. You're talking about Mr. Reagan here; right, what Reagan said?

"A. Mr. Reagan telling me how this was related to him or rather, what he told me.

"Q. Did he indicate that ... whether or not he had asked any questions of this person?

"A. Asked him the name.

"Q. And did he indicate that he's been provided that?

"A. Yes.

"Q. And is that where he got the name Charles English?

"A. Yes.

"Q. Did he indicate that that person had worked with him before?

"A. Yes."

(Record at 196).

The State next called Officer Delaney, the other investigator of the crime. He testified as follows:

"Q. Were you present when he ... when Mr. Reagan and Mr. Brown gave the information over to Mr. Smith?

"A. Yes sir, I was.

"Q. And what did they relate?

"A. Other than just description?

"Q. What did they relate in reference to what had happened at the time?

"A. Oh, uh, Mr. Reagan had stated that he knew the individual that had robbed him. At which time he made a phone call and he gave the name of the suspect as soon as he finished the call.

"Q. Did he indicate to you how he had known him?

"A. Uh, yes sir, he did. He stated that the individual had been in the station usually two or three times a week.

"Q. And this person that he called did he indicate why he was calling him?

"A. Uh, yes sir. He said ...

MR. MURPHY: Objection, yes or no is the ...

THE COURT: Sustained.

"Q. And what ... and what did he say then?

"A. Uh, he made ... he made the phone call and he talked to a subject on the phone for a short period of time. I'd say approximately thirty seconds to a minute and he hung up the phone and then he gave me the name of the suspect.

"Q. What was the name that he gave you?

"A. Charles English.

"Q. Now did he ... did Mr. Reagan explain why it was that he was calling this particular individual?

"A. Yes sir, he did, uh....

"Q. And what did he say? What was his reason?

"A. He stated that the individual that he called had worked with Mr. English at Brockway Glass in Lapel.

"Q. Was there anything said in reference to him being in the station before?

"A. Uh, yes sir, uh....

"Q. What was that?

"A. He did state that this was the second time that he had been robbed by Mr. English."

(Record at 229, 230).

◾ Appellant raised the sole issue on appeal that the prosecutor intentionally elicited Officer Delaney's response regarding Appellant's past criminal behavior, and that such evidence was so highly prejudicial it warranted a mistrial. Essentially, he asserts that the prosecutor used the impermissible evidentiary tactic commonly referred to as an evidentiary harpoon. In considering allegations of the use of an evidentiary harpoon, we analyze whether the evidence was intentionally interjected despite its known inadmissibility, whether there was a serious conflict in the evidence, the degree to which the defendant was implicated by the evidence under scrutiny, and the trial court's admonishment to the jury. *Davis v. State* (1981), 275 Ind. 509, 418 N.E.2d 203, 205. However, in the case at bar the evidence did not clearly indicate the prosecutor intentionally elicited inadmissible information from witness Delaney.

Moreover, there was such overwhelming evidence of Appellant's guilt that the prejudicial impact of Delaney's statement was adequately cured by the trial court's admonishment to the jury.

■ The evidence supporting the claim that the prosecutor purposefully elicited the inadmissible statement of Delaney, is highly controverted. A trial court exercises its discretion in determining whether to grant a motion for a mistrial when improper evidence of past crimes is admitted. *Coble v. State* (1985), Ind., 476 N.E.2d 102, 105; *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 489. This Court will reverse the trial court only for an abuse of discretion when defendant claims a mistrial was improperly denied. *Johnson v. State* (1982), Ind., 432 N.E.2d 1358. Witness Delaney obviously was called to testify for reasons other than to give inadmissible testimony. He was one of the investigators of the crime and testified Reagan stated he knew the man who had robbed him. Delaney, having arrived on the scene shortly after the crime, corroborated Officer Smith's testimony. He further testified as to the graphic physical description of the robber as given by Reagan. Moreover, the State claims that the prosecutor's question to Delaney as to whether anything was said in the telephone conversation about Appellant having been in the station before was intended to elicit information tying together why Delaney called a friend to obtain Appellant's name. More specifically, the State claims the question was intended to inform the jury that Reagan and his friend, who recalled Appellant's name, had been together in the gas station when Appellant had come in on previous occasions. Reagan's friend had told Reagan Appellant's name on those prior occasions. Thus, Officer Delaney's testimony was offered to assist the jury in understanding why Reagan called his friend to remember Appellant's name. Delaney even testified outside the presence of the jury how the prosecutor warned him not to mention any prior crimes committed by Appellant. The State's explanation of the prosecutor's questioning is just as plausible as the Appellant's claim of an evidentiary harpoon. Consequently, the trial court did not abuse its discretion in deciding not to grant a mistrial.

■ Moreover, we reverse a trial court's determination only if a defendant on appeal demonstrates he was placed in a position of grave peril to which he should not have been subjected as a result of the admission of the improper evidence. *Counceller v. State*, (1984), Ind., 466 N.E.2d 456, *reh. denied; Elliott v. State* (1984) Ind., 465 N.E.2d 707. Further, an admonition to the jury usually is presumed to cure any errors in the admission of evidence. *Brendel v. State* (1984), Ind., 460 N.E.2d 919, 921; *Beal v. State* (1983) Ind., 453 N.E.2d 190, 193, *reh. denied.* Appellant English was identified by two eyewitnesses to the crime. One of these eyewitnesses could even identify Appellant by name. Although the appellant presented an alibi defense, the State presented rebuttal evidence, conflicting with the evidence presented by Appellant and his alibi witnesses. A jury, however, may disbelieve an alibi if the State's evidence is credible. However, the State bears no burden to rebut a defendant's alibi and need not present credible conflicting evidence for a jury to decline believing the defendant's alibi. *Thomas v. State*, (1982), Ind., 436 N.E.2d 1109, 1111, *reh. denied.* The jury declined to believe Appellant's alibi defense. Further, the State presented two eyewitnesses who identified Appellant as the perpetrator. Independently, they each chose Appellant's photograph from a photographic array. This Court agrees with the dissenting opinion from the Court of Appeals and cannot find that the evidence was so close the jury could have been influenced by any error in the admission of Delaney's statement. The trial court, having admonished the jury, cured any error. Further, the trial court did not err by denying Appellant's motion for a mistrial. Accordingly, the opinion of the Court of Appeals is vacated and the trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and SHEPARD, JJ., concur.