William **BENIRSCHKE**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 45S00–8902–CR–00108.

Supreme Court of Indiana.

Sept. 4, 1991.

Marce Gonzalez, Jr., Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant William Benirschke was found guilty by a jury in the Lake County Superior Court of two counts of Murder and one count of Robbery, a Class B felony. The jury also recommended the death penalty. On August 31, 1988, the trial court ordered that the death penalty be imposed on the double homicide.

The trial court further sentenced the defendant to a term of ten years on the robbery conviction. Five issues are presented for our review in this direct appeal as follows:

1. Alleged improper victim impact statements made by the prosecuting attorney in argument to the jury;

2. Whether the trial court improperly gave special weight to an aggravating circumstance;

3. Sufficiency of the trial court's sentencing findings;

4. Sufficiency of the evidence in support of the finding that the homicides occurred in the commission of a robbery; and

5. Whether the court properly excused certain jurors.

The facts show that Benirschke had been employed by J & W Custodial Service, a business run by victims James Cromwell and Walter Muvich. Problems arose in Benirschke's relationship with the victims and he, on several occasions, told friends and acquaintances he had been mistreated by the owners and had been "short-changed" in his paychecks. On those occasions he

stated he would kill the owners if they did not correct their ways. Because of problems with the owners, Benirschke was suspended during February 1988. In a statement given to police officers, Benirschke stated that on Friday, February 12, he went to the office of Cromwell and Muvich, carrying with him a .22 rifle with the intention of killing them, but no one was in the office. He left and returned about 8:15 p.m. on the same day. When he entered the office, he shot Muvich three times, then shot Cromwell twice, then shot Muvich again, then shot Cromwell in the head and finally shot Muvich in the head. He then flipped open Muvich's sport coat and took his checkbook which showed a balance of about one thousand or eleven hundred dollars ($1,000–$1,100) in Muvich's account. He stated he went there to kill Muvich but had to kill Cromwell because Cromwell was a witness. In addition to the statements to the police, Benirschke told several of his friends that he had shot both Cromwell and Muvich and had taken Muvich's checkbook and money.

## I. *Victim Impact Statement*

Benirschke urges reversible error was committed when the prosecuting attorney, during the death penalty phase of the trial, urged the jury to impose the death penalty by referring to the impact of the act of killing on the victims' families. He cites *South Carolina v. Gathers* (1989), 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876, and *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440. In view of the recent United States Supreme Court opinion, *Payne v. Tennessee* (1991), — U.S. —, 111 S.Ct. 2597, 115 L.Ed.2d 720, specifically overruling *Gathers* and *Booth*, the prosecutor's comments did not constitute a constitutional violation. Furthermore, the statements in issue here had the content and character of like statements of the prosecutor considered by this Court and found relevant to the issues at a capital sentencing and therefore permissible in *Woods v. State* (1990) *opinion on rehearing,* 557 N.E.2d 1325. No reversible error is presented on this issue.

## II. *Special Weight of Aggravators*

Benirschke claims the trial court erred by giving one of the aggravators special weight or a special ranking that violated the standards directed by IND.CODE § 35–50–2–9. This statute provides first that the death penalty may be recommended by the jury only if there is a finding that the State has proven beyond a reasonable doubt that at least one of the aggravating circumstances exists and, second, that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances. Our death penalty statute further provides the court is to make the final determination of the sentence after considering the jury's recommendation and the sentence shall be based on the same standards that the jury was required to consider. IND.CODE § 35–50–2–9(e). At the sentencing hearing, the trial court made the following observation:

> The [c]ourt, reviewing the types of murders that qualify for the death penalty, under the Indiana Penal Code, there are twelve in number....
>
> Here, you have a double homicide. I say, again, there are ten other types of murder that qualify for the death penalty, where only one life is taken. On a scale of one to twelve, this probably would be a twelve.

Record at 905–06. The court further stated:

> Again, the [c]ourt believes that if ever a murder qualified for the death penalty, if ever a scenario qualified for the death penalty, this is it.

Record at 909. The court found that the State proved Benirschke intentionally killed both Walter Muvich and James Cromwell and took eleven hundred dollars ($1,100) from Cromwell's body and, therefore, found the jury was justified in finding the existence of at least one of the aggravating factors beyond a reasonable doubt.

Appellant reasons these statements made by the court indicated he gave a special ranking to this aggravator over and above all others enumerated by the legislature and indicated a mind-set by the judge which precluded his giving proper consider-

ation to any of the mitigating circumstances or from doing anything except imposing the death penalty. Benirschke further reasons that this standard the judge had fixed in his mind was a different and higher standard than that used by the jury. We do not agree.

In imposing sentence, the trial judge did not give as his reason the fact that this aggravator is the most serious of all and somehow requires the death penalty solely on the ground that the defendant committed this crime. These statements by the judge were made preliminary to his judgment. It was necessary for him to find at least one aggravator had been proven beyond a reasonable doubt and to further find the crime for which the defendant was convicted and the manner in which it was committed, plus the character of the defendant, all taken together merited imposition of the death penalty. The judge did find this aggravator had been proven beyond a reasonable doubt and in a peremptory manner indicated that this was a particularly heinous crime, one that qualified as an aggravator because two people were killed rather than one, and the circumstances justified imposition of the death penalty. There was justification for this observation inasmuch as Benirschke admitted he killed the second man solely for the reason that he would be a witness to the killing of the first. The court then proceeded to enumerate considerations of aggravating and mitigating circumstances, the weight he gave to them and the conclusion of a sentencing judgment based thereon. We will consider the sufficiency of these findings in the next issue. We find no reversible error in the manner in which the court expressed his attitude in making his findings.

### III. *Sufficiency of Death Penalty Findings*

Benirschke claims that the trial court did not properly evaluate mitigating circumstances in arriving at its conclusion that the death penalty should be imposed.

The sentencing court has a separate and independent role in assessing and weighing the aggravating and mitigating circumstances and in making the final determination whether to impose the death penalty. It is the duty of the sentencing court to make the final determination of the sentence, after considering the jury's recommendation, and to base the sentence on the same standards that the recommending jury is required to consider. IND.CODE § 35–50–2–9(e). In arriving at its own separate determination as to whether the death penalty is an appropriate punishment, the sentencing court is to point out its employment of this process in specific and clear findings. *Judy v. State* (1981), 275 Ind. 145, 168, 416 N.E.2d 95, 108. The trial court's statement of reasons should include identification of each mitigating and aggravating circumstance found, specific facts and reasons which lead the court to find the existence of each such circumstance, and articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 71–72; *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, *cert. denied* (1983), 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699. After the instant case was fully briefed and argued by counsel before this Court, we determined the trial court had not clearly set out in its findings that it had made independent judgments as required and had not sufficiently indicated the evaluation given to mitigating circumstances. We, therefore, issued a writ of certiorari to the trial court requiring the trial judge to more specifically articulate the findings in these regards. The trial court responded and furnished findings in this areas. Supplemental briefing followed. Benirschke claims the trial court improperly weighed and evaluated the mitigating circumstances and, therefore, his ultimate finding of imposing the death penalty was invalid. We fail to see any significance in Benirschke's objections which would rise to legal error and demonstrate other than that he is dissatisfied with the findings.

The trial court found the State proved beyond a reasonable doubt that Benirschke committed each of the aggravating circumstances by intentionally killing Cromwell

and Muvich and, further, that he did so while committing or attempting to commit robbery. The court further enumerated its findings in each category of mitigating circumstances. His findings in this regard are as follows:

## MITIGATING CIRCUMSTANCES

### I.

### THE DEFENDANT HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL CONDUCT

There was no evidence that defendant has a significant history of prior criminal conduct. His only apparent contact with the authorities was a speeding charge to which he plead [sic] guilty in September, 1986.

### II.

### THE DEFENDANT WAS UNDER EXTREME MENTAL OR EMOTIONAL DISTURBANCE WHEN HE COMMITTED THE MURDER

There was some evidence the defendant was mentally and/or emotionally disturbed when he killed Walter Murvich and James Cromwell. The psychiatric testimony was that the defendant was depressed and had an anti-social personality resulting from a long history of drug abuse. However, both of the court-appointed psychiatrists testified that the defendant had not demonstrated any disorganized thought or perceptual distortion. They both concluded that the defendant was neither "insane" nor "mentally ill" as those terms are defined by statute when he killed Walter Murvich and James Cromwell.

### III.

### THE VICTIM WAS A PARTICIPANT IN/OR CONSENTED TO THE DEFENDANT'S CONDUCT

There was no evidence whatsoever that either of the victims either consented to or participated in the conduct of the defendant at the time of the crimes.

### IV.

### THE DEFENDANT WAS AN ACCOMPLICE IN A MURDER COMMITTED BY ANOTHER PERSON AND THE DEFENDANT'S PARTICIPATION WAS RELATIVELY MINOR

The evidence was that the defendant acted alone in the commission of these crimes and there is no evidence of any other person having participated in any manner whatsoever.

### V.

### THE DEFENDANT ACTED UNDER THE SUBSTANTIAL DOMINATION OF ANOTHER PERSON

There was simply no evidence that the defendant was under the substantial domination of another person.

### VI.

### THE DEFENDANT'S CAPACITY TO APPRECIATE THE CRIMINALITY OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENT OF THE LAW WAS SUBSTANTIALLY IMPAIRED AS A RESULT OF MENTAL DISEASE OR DEFECT OR OF INTOXICATION

Although there was evidence that the defendant was a drug abuser and had used drugs and/or consumed alcohol on the date of the crimes, there was no evidence that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law. Both the court-appointed psychiatrists concluded that the defendant was neither "insane" nor "mentally ill". The evidence was that this was a planned, thought-out killing of Walter Muvich and that the killing of James Cromwell was calculated to avoid apprehension for the killing of Walter Muvich. The overall scenario indicated a deliberate, calculated plan that was not substantially affected or impaired by the use of drugs or alcohol.

## VII.

### THE DEFENDANT WAS LESS THAN 18 YEARS OF AGE AT THE TIME THE MURDER WAS COMMITTED

The evidence was that the defendant was 25 years of age at the time of the commission of the crimes.

## VIII.

### ANY OTHER CIRCUMSTANCES APPROPRIATE FOR CONSIDERATION

The evidence showed that the defendant was a high school graduate and was in the U.S. Marine Corps for approximately three (3) years during which time he was stationed in Germany.

Revised Reasons For Imposition of Death Penalty, filed July 11, 1990, at 2–3. The trial court then stated in conclusion that it found the two aggravating circumstances and the existence of three mitigating circumstances, those being the defendant had no significant history of prior criminal conduct, the defendant had a history of depression and antisocial personality resulting from drug abuse which did not rise to the level of either a mental illness or insanity, and the defendant served approximately three years in the U.S. Marine Corps. The court then stated:

> The [c]ourt having carefully weighed and evaluated both the aggravating and mitigating circumstances now finds that the aggravating circumstances far outweigh the mitigating circumstances warranting the imposition of the Death Penalty in this case.

*Id.* at 4. Thus, the court did consider each category of mitigating circumstances, articulating his findings in analyzing each one and his conclusions as to the efficacy of each one. He then found that though there was evidence of mitigation in three areas, it was his finding and conclusion that their weight was overcome by the aggravating circumstances.

 Central to Benirschke's objections to the manner in which the trial court considered the mitigating circumstances is his assessment that the trial court did not give sufficient weight to some of them. More particularly, in Mitigating Circumstances II and VI, Benirschke claims that the trial court required that the mitigating circumstance named therein was so extreme that it would be a valid defense to the crime. Benirschke reaches this conclusion by referring to the court's language in II that the defendant was neither insane nor mentally ill and in VI that the use of those terms and language would indicate the court was considering this issue as one would in a defense of insanity at the time of commission. On the contrary, however, the trial court did follow the legislative scheme of IND.CODE § 35–50–2–9 in assessing these mitigating circumstances. The mitigating circumstance the trial court could consider under (c)(2) under the above statute is "that the defendant was under extreme mental or emotional disturbance when he committed the murder." IND.CODE § 35–50–2–9(c)(2). In other words, whatever the jury might find in the guilt or innocence stage of the trial as to that condition in the defendant is pertinent to consider in determining whether or not to impose the death penalty. A defendant could be found guilty but mentally ill, which still convicts him of the crime but may be a circumstance rendering the death penalty inappropriate. The trial court found here that, though there was evidence of mental or emotional disturbance, both court-appointed psychiatrists testified Benirschke had not demonstrated disorganized thought or perceptual distortion. They both concluded Benirschke was neither insane nor mentally ill when he committed these killings. This demonstrates an analysis by the court based on the evidence and an articulation as to his assessment of the weight of this circumstance as it affected the appropriateness of the death penalty. In specification (c)(6), a mitigating circumstance for consideration of the sentencing court is:

> The defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law was substantially impaired as a result of mental disease or defect or of intoxication.

IND.CODE § 35–50–2–9(c)(2). Again, the trial court can consider as a mitigating circumstance the mental condition of the defendant regardless of whether it might not have been so apparent as to merit a finding of not guilty of the commission of the crime. The trial court found there was evidence defendant was a drug abuser and had used drugs and/or consumed alcohol on the date of the crime, but there was no evidence this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law. Again he referred to the conclusions of both court-appointed psychiatrists that Benirschke was neither insane nor mentally ill and pointed out that the evidence showed this was a planned, thought-out killing of Walter Muvich and the killing of James Cromwell was calculated to escape apprehension. He finally concluded that the overall scenario indicated a deliberate, calculated plan that was not substantially affected or impaired by the use of drugs or alcohol. Thus, it is apparent that the trial court analyzed these mitigating circumstances in the manner in which he was directed by the statute and considered them based on the evidence presented to him. Other claims of error made by Benirschke of the trial court's handling of mitigating circumstances do nothing more than ask us to second-guess the trial court's weighing of the evidence and the significance of the circumstances. Since all of the trial court's findings in this regard are based on the evidence present in the record, we find no grounds for doing so.

The record reveals that the trial court properly considered both aggravating and mitigating circumstances and properly imposed the death penalty in accordance with the Indiana act.

## IV. *Sufficiency of the Evidence on the Aggravator of Robbery*

■ Benirschke claims that because he took a checkbook and money from one of the victims after he had shot them, the evidence was insufficient to show the killing was perpetrated in the course of a robbery. In *Thompson v. State* (1982),

Ind., 441 N.E.2d 192, the claim was made that a robbery was completed before a homicide and thus could not have been part of the homicide so as to constitute felony murder. This Court noted in that case that the shooting occurred before any asportation of property and further noted that where the homicide and robbery are closely connected in time, place and continuity of action, they are deemed part of one continuous transaction. *Id.* at 194. *See also, Eddy v. State* (1986), Ind., 496 N.E.2d 24, 28 ("To require that the murder occur before each of the statutory elements of the robbery have been completed would elevate form over substance.") There was evidence in this case, including Benirschke's confession to police and his statements to friends and acquaintances, that he believed the victims had cheated him out of money. He made reference to the fact that the victims owed him money in the same statement that he indicated he was inclined to kill them. The facts further show that immediately after shooting the victims, he took the money from one of them. Thus, the trier of fact could infer that Benirschke's intent was to take money as well as to kill and that he, in fact, did so.

## V. *Excusal of Jurors*

■ Finally, Benirschke urges that the trial court improperly excused two jurors for cause because of their views on the death penalty. He relies on *Adams v. Texas* (1979), 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581, and *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, and correctly states that the test for exclusion for cause of a juror opposed to capital punishment is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams*, 448 U.S. at 45, 100 S.Ct. at 2526, 65 L.Ed.2d at 589.

■ Examination of the transcript reveals each of the two jurors involved stated he or she could never as a juror vote to recommend the death penalty. Each of them indicated he or she was opposed to the death penalty and could not find a case

where it would be appropriate. These statements clearly indicated these jurors could not follow their oaths and apply the law.

As the United States Supreme Court observed in *Wainwright v. Witt* (1985), 469 U.S. 412, 425–26, 105 S.Ct. 844, 853, 83 L.Ed.2d 841, 852–53: "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... [T]his is why deference must be paid to the trial judge who sees and hears the juror." The testimony of these two prospective jurors supported the trial court's decision to exclude them from hearing the case. There was no error.

## CONCLUSION

The conviction and death sentence are affirmed and this cause is remanded to the Lake Superior Court to conduct any further proceedings.

SHEPARD, C.J., and GIVAN, and DICKSON, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DeBRULER, Justice, concurring in result.

I agree with appellant that the trial court did not properly evaluate the evidence of his mental disturbance as a mitigating circumstance. The specific finding on this mitigating circumstance is:

(b) The defendant had a history of depression and anti-social personality resulting from drug abuse "which does not rise to the level of either a mental illness or insanity."

One of the psychiatrists who testified with respect to the defense of insanity at the initial phase of the trial, while being of the opinion that there was no insanity, nevertheless testified that appellant had long suffered from chronic clinical depression and from drug and alcohol abuse and addiction. He became addicted in the 8th grade. He joined the Marines at age 17 under pressure from authorities. He was discharged in 1984 on a basis that was less than honorable because of his drug and alcohol addiction. When separated from the service, he was hospitalized for a month for this condition. He then lived with his mother without working for a year and a half, before getting a job from the victims. His addiction continued and he stole money from his mother and others. He was fired by the victims in December of 1987. On February 1, 1988, his mother told him that he had to leave her house by March 1. Later in February, when appellant was 25 years of age, in anger over not having been called back to work, and for perceived mistreatment, he killed the two victims, took money from the body of one, wiped his fingerprints from the area, hid the weapon, and then proceeded over a few days to spend the stolen money on personal pleasures. The intent to kill with respect to each victim was separate in time and different in kind.

At the sentencing hearing before the trial judge, one of the psychiatrists was called again by the defense. He testified that while in jail, Benirschke was receiving 5 mg. Haldol, a strong phychotropic drug 10 mg. Cogentin and 100 mg. Allavil. In remarking about his total lack of remorse over the killings, the psychiatrist said that the appellant was so sick that he could not have feelings of remorse with respect to his crime. Under the circumstances reiterated above, the extreme mental disturbance mitigator, I.C. 35–50–2–9(c)(2), has more weight than that accorded it by the trial court. Its weight is certainly in the middle range. The other two mitigators, lack of criminal history and military service, have somewhat less weight.

The circumstances here are similar to those present in *Moore v. State* (1985), Ind., 479 N.E.2d 1264, a capital case in which Moore shot and wounded his mother-in-law, and shot and killed his ex-wife, father-in-law, and a police officer, in a single violent episode, a few days after his divorce. There, the multiple murder aggravator was also operative, and so also was a second aggravator, namely the killing of a police officer. The level of mental disturbance

was more extreme than in the present case, and Moore, to his credit, had made significant efforts in overcoming his alcoholism and in helping others. The weight of mitigators, in the case of Benirschke, is somewhat less than that of the mitigators in Moore, while the weight of aggravators, in the case of Benirschke, is somewhat more than that of the aggravators in *Moore*.

Upon review in the foregoing fashion, I reach the same result as did the trial court. I find that the three mitigating circumstances, when properly and accurately determined and evaluated, are outweighed by the two aggravating circumstances which included the conduct of shooting the two victims several times, the formation in serial fashion in the course of the episode of the conscious objective to kill one and then the other, both while having maintained the conscious objective to rob. The sentence is not arbitrary or capricious and is not manifestly unreasonable. I therefore concur in result.