Charles Edward ROCHE, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–9012–DP–812.

Supreme Court of Indiana.

July 20, 1992.

Charles E. Stewart, Jr., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant and a codefendant, Edward John Niksich, were tried by jury and both were convicted of two counts of murder and two counts of felony murder. Another defendant, Charles Edward Roche, Sr., was tried separately. The jury was discharged after failing to reach a recommendation regarding the death penalty as to appellant, and reaching a recommendation against the death penalty as to Niksich. The trial court subsequently sentenced appellant to death.

The facts are: Sometime before February of 1990, Niksich used Patricia Andrasco's car to give Ernest Graves, who also was known as "Pee Wee," a ride. The next day, Andrasco, who lived with Niksich, noticed that $120 worth of food stamps was missing from her car.

The State introduced in evidence the deposition of Nanetta Blaski, a baby-sitter for Niksich and Andrasco, in which she stated that sometime in April of 1990, appellant and Niksich arrived at Andrasco's residence, and there was a discussion about two people, Ernest Graves and Daniel Brown, also known as "Danny Boy," who were going to be killed or who had been killed. Niksich stated that he wanted to put Graves and Brown in the trunk of Andrasco's car.

Delores Duszynski, who lived with appellant, testified that on the evening of May 10, 1990, appellant, Roche, Sr., and Niksich left the house driving her car. When appellant arrived home, he entered through the basement, told Duszynski to stay where she was, and told her that there were some guys in the basement he was

going to shoot because they owed someone $120.

Duszynski testified that after approximately five minutes appellant went downstairs and Duszynski heard about nine or ten gunshots. She heard someone plead for his life, and then she heard two or three more gunshots. Appellant, Roche, Sr., and Niksich then came upstairs and told Duszynski that the victims possessed only $19 and a dime bag of cocaine.

After appellant, Duszynski, and Niksich each consumed some of the cocaine, appellant asked permission to use Duszynski's car to transport the bodies. The three men went downstairs, and after approximately fifteen or twenty minutes Duszynski heard the car leave.

On the evening of May 10, 1990, Jose Sanchez saw appellant, Roche, Sr., and Niksich in a car. Appellant was driving the car, and the men offered Sanchez a ride. Upon arriving at Sanchez' house, appellant opened the trunk of the car. When Sanchez saw the bodies, Niksich told Sanchez that he had shot one of the men while they were in the basement of appellant's house. Niksich stated that he had told one of the victims that he was going to die and that he was with the wrong guy at the wrong time and the wrong place. Appellant stated that he had shot the other victim while the victim begged for his life. Appellant told Sanchez that he had used both a .38 caliber derringer and a .22 caliber rifle. At one point, he went upstairs to get the rifle, and upon returning, repeatedly shot the victim in the head.

James Superits testified that appellant sold him a two-shot derringer on May 13, 1990. Later that same day appellant showed Superits a clipping from a newspaper, claimed that he did it, and described the killings. Three days later Superits gave the gun to the police.

On May 14, 1990, Andrasco gave a statement to the police. She told the officers that on the evening of May 10, 1990, Niksich left the house and then returned later in the night. Niksich told Andrasco that he finally had gotten even with Pee Wee for stealing the food stamps.

On June 10, 1990, appellant described to Virginia Ratazczak, a correctional officer for the Lake County Sheriff's Department, how the two victims had been murdered. Appellant told Ratazczak that while he and Niksich were at the Spot Bar in Calumet City, Niksich pointed out the two victims and stated that one of them owed him $120. Appellant and Niksich then set up a phony drug deal with the two victims, took them to the basement of appellant's home, where appellant then went upstairs to get a gun.

Nine bullets were recovered from the victims' bodies. The State introduced in evidence State's Exhibit 26, a two-shot .38 caliber Excam Derringer. Tests on the bullets showed that four of the bullets were fired from the lower barrel of State's Exhibit 26; therefore, the derringer had to be reloaded at least three times during the perpetration of the crimes.

Appellant testified that he shot both victims, but claimed that he did so in self-defense. He testified that he owned the .38 caliber derringer, and admitted that he told two deputy wardens that he volunteered to kill the victim who owed Niksich money.

The cause of death of Ernest Graves was multiple gunshot wounds. The cause of death of Daniel Brown was a skull fracture and lacerations caused by gunshot wounds. Factors contributing to Brown's death were a perforation of the stomach and small intestine and hemorrhaging caused by gunshot wounds.

■ Appellant's first argument is that the sentence of death imposed upon him violates the Eighth and Fourteenth Amendments to the United States Constitution and art. 1, §§ 16 and 18 of the Indiana Constitution. Appellant urges us to examine the degree of culpability of each of the defendants in the present case. Appellant contends that since Niksich's culpability was as great as his own, appellant's sentence is disproportionate to the two consecutive forty (40) year terms Niksich received for his part in the crimes.

■ Upon review of the imposition of a death sentence, we must determine if that penalty is appropriate to the offender and his crime. *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731. We also recognize that while an accomplice may be found guilty of a crime which was largely executed by his principal, imposition of the same penalty for principal and accomplice may not be appropriate. *Id.* The State presented evidence that appellant had volunteered to kill Graves and in fact had shot both Graves and Brown after taking from them $19 and some cocaine. The trial court and the jury were in the best position to weigh the evidence and assess the degree of culpability of the codefendants for purposes of sentencing. We will not make a new determination as to the degree of culpability of the defendants. *Brewer v. State* (1981), 275 Ind. 338, 417 N.E.2d 889, *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384. There is ample evidence in the record to support the penalty imposed.

■ Appellant next argues that the sentence was inappropriate under the circumstances of the case. The jury was unable to reach a determination regarding whether to impose the death penalty. Therefore, the trial court acted properly when it discharged the jury and proceeded as if the hearing had been conducted to the trial court alone. Ind.Code § 35–50–2–9(f).

Appellant argues that the trial court failed to consider as a mitigating circumstance Niksich's role as a catalyst in the events surrounding the murders. Appellant restates his contention that, in his view, Niksich was at least as culpable as appellant, and that because Niksich received a lesser sentence that appellant should receive a similar sentence.

The record indicates that the trial court in fact did consider appellant's argument that Niksich acted as a catalyst in the commission of the crimes. However, the trial court did not find that to be a mitigating factor nor was it required to do so. *See Graham v. State* (1989), Ind., 535 N.E.2d 1152.

■ Appellant next argues that the trial court erred by failing to consider as a mitigator the fact that the jury was unable to reach a recommendation regarding the death penalty. As previously stated, the effect of a jury's inability to reach a recommendation is that the jury will be discharged and the trial judge shall conduct the sentencing as if it had been tried to the trial court alone. Ind.Code § 35–50–2–9(f). Therefore, no meaning should be interpreted from the jury's failure to reach a recommendation. Likewise, the failure to reach a recommendation should not be considered as a mitigating factor during the penalty phase.

Appellant argues the trial court found that appellant's case "cried out for the death penalty," but failed to factually support this conclusion. We disagree. The trial court did consider all factors relevant to sentencing appellant. The trial court found that the State had proven the two aggravating circumstances charged and that two mitigating circumstances existed; however, the aggravating circumstances outweighed the mitigating circumstances. The trial court further stated, among other things, that this case was a double homicide committed during a robbery while one victim pled for his life, and that it was triggered by a dispute concerning $120. Review of the record indicates that the conclusion reached by the trial court during sentencing was factually supported.

■ Appellant argues that the sentence imposed was disproportionate to sentences imposed in other cases. We note that many of the cases cited by appellant in support of his argument are cases in which the sentence was a term of years and the death penalty was not sought by the State. The prosecutor in his discretion may seek the death penalty against a particular defendant. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, *cert. denied*, (1988), 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158. However, this discretion is controlled by our system of review which prevents the arbitrary and capricious infliction of the death penalty. *Id.*

The gist of appellant's argument here is that because the death penalty was not sought in cases involving arguably similar facts, imposition of that sentence in the case at bar is both arbitrary and capricious. This issue already has been decided against appellant. The United States Supreme Court held in *Pulley v. Harris* (1984), 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29, that this type of proportionality review is not constitutionally required. The Court further stated that a death penalty statute will be upheld against a constitutional challenge so long as it provides adequate guidance to the sentencer regarding performance of the sentencing function, prompt judicial review to promote consistency, and evenhandedness in the imposition of the sentence. *Id.*

Therefore, appellant's focus on the State's decision to seek the death penalty in certain cases and not others involving similar facts is misplaced. The issue with which we are concerned, upon review of the sentence, is the fairness in the imposition of the sentence, in light of other cases where the death penalty was sought. *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied*, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158. This case is factually similar to other cases where the death penalty was sought and imposed. *See e.g., Benirschke v. State* (1991), Ind., 577 N.E.2d 576; *Brewer, supra*. Imposition of the death penalty in the present case is not disproportionate to sentences imposed in other cases.

■ Next, appellant challenges the degree of specificity with which the trial court supported its sentencing findings. Appellant cites *Evans v. State* (1990), Ind., 563 N.E.2d 1251, for the proposition that the trial court must provide a statement of reasons for the imposition of a sentence. The reasons must include identification of all significant mitigating and aggravating circumstances, specific reasons to support why each circumstance is mitigating or aggravating, and an indication that the mitigators and aggravators have been weighed to determine if the aggravators offset the mitigators. *Id.*

Appellant claims the trial court failed to factually support its conclusions: 1.) that appellant's degree of culpability was an aggravating circumstance; 2.) that although appellant did not act alone, which is considered to be a mitigating factor, appellant was a major participant; and 3.) that the case cried out for the death penalty.

The trial court's statement of findings in this case are quite similar to the trial court's statement of findings in *Benirschke, supra*, which we found to be adequate. We note that the trial court fully assessed the existence or non-existence of the aggravating and mitigating circumstances in this case in those written findings. While the trial court did not enumerate in its findings the factors considered in concluding that appellant was more culpable than Niksich, those reasons were stated by the trial court during the sentencing hearing. The findings and the record made during the sentencing hearing provided adequate factual support of the trial court's conclusions for purposes of review. We see no error here.

■ Appellant contends that reversible error occurred when a victim impact statement was introduced during the sentencing phase of appellant's trial. Attached to the presentence report which was considered by the trial court during sentencing was a letter from the mother of one of the victims. Appellant claims that introduction of this letter violated the Eighth Amendment of the United States Constitution and art. 1, § 16 of the Indiana Constitution, and relies on *South Carolina v. Gathers* (1989), 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 and *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440, to support that argument.

We noted in *Benirschke, supra*, that the United States Supreme Court overruled both *Gathers, supra* and *Booth, supra*, in *Payne v. Tennessee* (1991), — U.S. —, 111 S.Ct. 2597, 115 L.Ed.2d 720, regarding the admissibility of victim impact statements. The United States Supreme Court held that consideration of victim impact statements during the sentencing phase of capital cases was not prohibited by the

Eighth Amendment of the United States Constitution. No reversible error is presented on this issue.

Next, appellant challenges the constitutionality of Ind.Code § 35–50–2–9(f). Appellant claims that the statute violates his right to a jury determination of the existence of aggravating circumstances pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and art. 1, § 13 of the Indiana Constitution by allowing the trial court to discharge the jury and proceed on its own during the sentencing phase in a capital case when the jury is unable to agree on a sentencing recommendation. Appellant contends that determination of the existence of an aggravating circumstance is an element of capital murder, and as such must be determined by a jury rather than by the trial court. Appellant relies on *Adamson v. Ricketts* (9th Cir.1988), 865 F.2d 1011, *cert. denied,* — U.S. —, 110 S.Ct. 3287, 111 L.Ed.2d 795, to support his position.

However, the United States Supreme Court recently has held that the Sixth Amendment does not require that the specific findings authorizing the imposition of the death penalty be made by a jury. *Walton v. Arizona* (1990), 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511. Aggravating circumstances are standards to be used during the sentencing phase of the capital murder case to assist in the choice of sentencing a defendant to death or to life imprisonment and as such are not separate elements of the crime. *Id.* Therefore, the United States Constitution does not require that only a jury can make the determination of the existence of those circumstances. Therefore, in light of the *Walton* decision we find that Ind.Code § 35–50–2–9(f) is constitutional.

Appellant's final argument is that the trial court committed reversible error on two occasions when reference to appellant's prior criminal history was made during the guilt phase of the trial. On the first occasion, the trial court admitted in evidence over objection a fingerprint card bearing appellant's fingerprints. The card also listed appellant's prior burglary conviction. Appellant contends the trial court erred a second time when appellant's motion for mistrial was denied after a witness referred to an exhibit as a "repeat offender" sheet.

Appellant objected to admission of the fingerprint card on the grounds that an inadequate foundation had been laid, but also that an improper reference to an unrelated past offense would be made. The trial court admitted the exhibit as a business record exception to the hearsay rule. No ruling was requested or made regarding the prior offense objection to the exhibit.

We have held that when an objection is made and appellant does not request a ruling on the objection, appellant waives his objection. *Turczi v. State* (1973), 261 Ind. 273, 301 N.E.2d 752. An error not properly preserved during trial and by the motion to correct error is not available on appeal. *Ward v. State* (1988), Ind., 519 N.E.2d 561. The trial court did not commit reversible error.

However, assuming that appellant did properly preserve this issue for appeal, we find no reversible error. Appellant correctly states that as a general rule evidence of a defendant's prior crimes is highly prejudicial and should not be admitted. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054. But in the instant case, as discussed above, the evidence of appellant's guilt was overwhelming. Where the jury's verdict is supported by independent evidence of guilt such that upon review we are satisfied that there was no substantial likelihood that the evidence in question played a part in appellant's conviction, any error in its admission is harmless. *Jaske v. State* (1989), Ind., 539 N.E.2d 14.

Appellant's argument regarding the second instance of alleged error likewise fails. Appellant moved for a mistrial after a witness for the State referred to an exhibit as a "repeat offender" sheet. The trial court denied appellant's motion and admonished the jury to disregard the remark. Appellant contends the trial court

committed reversible error by denying his motion for mistrial.

Mistrial is an extreme remedy warranted when no other curative measure will rectify the situation and is a matter which lies within the discretion of the trial court. *Szpyrka v. State* (1990), Ind., 550 N.E.2d 316. The standard used to determine if a mistrial is warranted is a consideration of whether the defendant was placed in a position of grave peril to which he should not have been subjected. *Jackson v. State* (1988), Ind., 518 N.E.2d 787. The gravity of the peril is determined by the probable persuasive effect on the jury's decision. *Id.* A trial judge is in the best position to gauge the surrounding circumstances and potential impact on the jury. *Szpyrka, supra.* The evidence in the present case was not so close that this remark influenced the jury, thereby placing appellant in a position of grave peril. *Jackson, supra.* Further, an admonition is presumed to cure any error in the admission of evidence. *English v. State*, (1985), Ind., 485 N.E.2d 93.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., concurs with separate opinion in which KRAHULIK, J., concurs.

KRAHULIK, J., concurs in result.

DeBRULER, Justice, concurring.

In this case the jury, after convicting appellant of two counts of murder and two counts of felony murder and hearing the additional evidence at the sentencing hearing, recommended life for codefendant Nicksich but was unable to render a penalty recommendations as to appellant Roche, Jr. When there is no such penalty recommendation by the jury, the statute requires the court to "discharge the jury and proceed as if the hearing had been to the court alone." I.C. 35-50-2-9(f). I do not agree with the majority that this proscription requires that "no meaning" be given to the failure to make a recommendation. The quandary of the jury represents at least the sentiment of one conscientious juror, who survived voir dire, who heard the shocking evidence of sudden injury and death, who voted for conviction, and finally whose conscience could not support imposition of the death penalty. In my opinion, that sentiment cannot rationally be rejected as a mitigating circumstance as falling within the catch-all, "I.C. 35-50-2-9(C)(8) Any other circumstances appropriate for consideration." The weight of it is not great, falling I would say in the low range. I agree, however, that the mitigation claims that appellant acted under the domination of Niksich and that appellant was less culpable than Niksich are properly rejected as insufficiently supported.

Here, the trial judge found to exist the mitigator of no significant history of prior criminal conduct. This mitigator is in this case in the low range. Appellant was convicted of burglary in 1982 at age 20, and received a prison sentence of ten years. He was released on parole in March 1989, and committed these offenses fourteen months later in May 1991. According to his own testimony at trial, after release he was conducting three or four drug sales a week from his home, used alcohol and various drugs to excess, and possessed several guns, all in violation of his parole.

The trial court also concluded that appellant's traumatic childhood and resulting psychiatric treatment during puberty together with his addiction to drugs and alcohol constituted a mitigating circumstance. I agree and accord it weight in the middle range.

Here, these three mitigators must be weighed against the two aggravators found to exist by the trial court, namely the intentional killing during a robbery, and the double killing in the episode. I.C. 35-50-2-9(b)(1) and (b)(8). This type of double killing where the intent to kill is present is of the highest range. I find both aggravators to be proved beyond a reasonable doubt, the total value of the three mitigating circumstances to be outweighed by it, and the death penalty appropriate.

KRAHULIK, J., concurs.