Paul W. STEWART, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9202–CR–75.

Court of Appeals of Indiana,
Second District.

Oct. 8, 1992.

James H. Voyles, Dennis E. Zahn, India-
napolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Lisa M.
Paunicka, Deputy Atty. Gen., Indianapolis,
for appellee-plaintiff.

BUCHANAN, Judge.

Appellant-defendant Paul W. Stewart
(Stewart) appeals his conviction for rape,[1] a
class B felony.

We affirm.

FACTS

The facts most favorable to the judg-
ment reveal that in May, 1989, Lori School-
er (Schooler), a United States Army Re-
servist, and several others, went to the
Sheraton Inn in Indianapolis. They met
Stewart, the hotel owner, and he invited
Schooler and her friends to be his guests at
the hotel's night club. They accepted, and
later in the evening, Stewart and Schooler
danced together.

The following weekend, Schooler and her
friends returned to the hotel and Stewart
was invited to their rooms. Shortly there-
after, Schooler followed Stewart into the
hotel office. Stewart locked the office
door, lifted Schooler onto the desk and be-
gan kissing her. As Schooler attempted to
resist Stewart's advances, he grabbed her

1. Ind.Code 35–42–4–1.

wrist, pushed her onto a couch, and raped her.

Following a jury trial on October 9, 1991, Stewart was convicted.

### ISSUES

Stewart presents the following issues for review:

1. Did the trial court properly deny Stewart's motions for a mistrial?

2. Did Schooler's testimony regarding evidence of a relationship with a fellow army reservist constitute reversible error?

3. Was the evidence sufficient to support the conviction?

### DECISION

ISSUE ONE—Were the motions for mistrial properly denied?

PARTIES' CONTENTIONS—Stewart argues that several of Schooler's comments during her direct examination were inappropriate and prejudicial and therefore the trial court should have granted his motions for mistrial. The State responds that the trial court's admonishments were sufficient to cure any prejudicial impact of Schooler's statements.

*CONCLUSION*—The trial court properly denied Stewart's motions for a mistrial.

At trial, the following exchange occurred between the State and Schooler:

"Prosecutor: And then what happened?
Schooler: Before I turned around I—I was mentioning to him that he didn't have any family pictures on his desk, things like that. And then I turned around and he was locking the door.
Prosecutor: What did you do then?
Schooler: Ah—I went around the—the desk and I asked him what he was doing. And that's when he approached me. And he picked me up and he put me on the desk—*you deserve to die, do you know that?*"

*Record* at 208 (emphasis supplied). Stewart moved for a mistrial, and following arguments by trial counsel, the motion was denied. The trial court admonished the jury as follows:

"You may be seated, ladies and gentlemen. Ladies and gentlemen[,] you must banish from your mind the unsolicited comments of the complaining witness made immediately prior to the recess. Your consideration of this case must be based solely on the facts of this case as you determine them to be. You as judges must discharge this duty of determining the facts of this case without being swayed by any appeal to your sympathy or by any demand for retaliation by any witness."

*Record* at 229–30.

At a later time during trial, the following colloquy occurred between the State and Schooler:

"Prosecutor: Did Mike Spicer talk with him on the phone?
Schooler: Mike wanted the phone but I just hung it up. *Mike wanted to kill him.*
Prosecutor: Just answer the question that's in front of you."

*Record* at 256 (emphasis supplied). After Stewart moved for a mistrial and the trial judge heard arguments by counsel for both parties, she denied Stewart's motion and rendered an admonishment to the jury, similar to the one quoted above. *See record* at 271–72.

Finally, during cross-examination, Schooler made the following remarks:

"Mr. Voyles: How long do you think he was there?
Schooler: Probably an hour or two (2).
Mr. Voyles: That's the maximum length of time that he would have been there that afternoon?
Schooler: *Your honor—you're asking the same questions over and over.*"

*Record* at 369–70 (emphasis supplied). Defense counsel moved for a mistrial, arguing that Schooler was attempting to reprimand counsel for asking various types of questions, and dictating how cross-examination was to be pursued. *See record* at 371–72. The trial judge also denied this motion for mistrial.

The trial court has discretion in determining whether to grant a mistrial, and this

decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *Kelley v. State* (1990), Ind., 555 N.E.2d 140; *Gregory v. State* (1989), Ind., 540 N.E.2d 585. The court in *Kelley* determined that:

> "To succeed on appeal from the denial of a motion for mistrial, the defendant must demonstrate the conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct.... The defendant has the burden of showing no action other than a mistrial could have remedied the perilous situation in which he was placed."
> [Citations omitted].

*Kelley, supra* at 141; *see also Gregory, supra; Reno v. State* (1987), Ind., 514 N.E.2d 614.

Stewart has failed to demonstrate that the comments Schooler made at trial placed him in a position of grave peril which would require a reversal. An admonition to the jury usually is presumed to cure any errors in the admission of evidence. *English v. State* (1985), Ind., 485 N.E.2d 93; *Brendel v. State* (1984), Ind., 460 N.E.2d 919.

█ While Schooler's statement that Stewart "deserved to die" was inappropriate, the statement was unsolicited and Stewart has failed to demonstrate that this testimony was so prejudicial as to warrant a reversal. Schooler's statements that her friend Mike Spicer (Spicer) wanted to kill Stewart, and her comment regarding defense counsel's questions, were clearly volunteered and unresponsive.

The prejudicial effect of Schooler's statements does not entitle Stewart to a new trial. There was no evidence that her testimony was intentionally interjected despite its known inadmissibility. As discussed in issue III, *infra,* the evidence was clearly sufficient to support the jury's verdict, and

the admonishment given by the trial judge was sufficient to cure any prejudice that Stewart may have suffered. *See Ratcliffe v. State* (1990), Ind., 553 N.E.2d 1208; *English v. State* (1985), Ind., 485 N.E.2d 93.

The trial court did not err in denying Stewart's motions for a mistrial.

ISSUE TWO—Was testimony regarding Schooler's relationship with another reservist reversible error?

PARTIES'  CONTENTIONS—Stewart claims that reversible error was committed when the trial court allowed the State to present evidence of Schooler's relationship with another reservist in violation of its own motion in limine. The State replies that a motion in limine is not a final ruling on the admissibility of evidence and that the testimony was admissible.

CONCLUSION—The trial court did not err in denying Stewart's motion for a mistrial based upon the argument that Schooler's testimony violated a motion in limine.

Prior to trial, the State filed a motion in limine which provided in relevant part that:

> "the defendant and his counsel, and any of his witnesses, be instructed not to mention, or refer in any way to:
> (a) evidence of the victim's, Lori Schooler, and all other State's witnesses' past sexual conduct...."

*Record* at 51–52.

At trial, the State, during direct examination, questioned Schooler as follows regarding her relationship with Spicer, as follows:

> "Q. What sorts of things did you do together? ·
> A. Went to class together, we'd eat together, we—different things. I mean, we'd go off base, we'd go eat, we'd go to a movie, go visit friends—anything there was to do.
> Q. Did a relationship develop between the two of you?
> A. Not at first, but eventually it did.
> Q. *Was that a sexual relationship?*
> A. *Oh no. Not at all."*

*Record* at 181. Following this exchange, Stewart moved for a mistrial on the grounds that the State violated its motion

in limine. *Record* at 182–86. In response, the State argued that Stewart could permissibly cross-examine Schooler regarding her relationship with Spicer. In denying the motion for a mistrial, the trial judge remarked that:

"I think at this point they have a right to cross examine on that since you've asked that particular question, the nature of the relationship. I don't see any—that there is any prejudice at this point...."

*Record* at 185–88.

The trial court's grant of a motion in limine is not a final ruling that evidence sought to be excluded at trial will not be admitted. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860. Error occurs only when the challenged evidence is improperly admitted at trial. *Serano v. State* (1990), Ind.App., 555 N.E.2d 487, *trans. denied.* As discussed in issue I, *supra,* before the decision denying a mistrial will be reversed, the defendant must demonstrate that the conduct complained of was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Kelley, supra; Gregory, supra.* Stewart has failed to demonstrate any prejudice as a result of admitting Schooler's testimony regarding her relationship with Spicer into evidence. The only questions asked pertained to the nature of the relationship that Schooler maintained with Spicer.

The trial court properly determined that Stewart was entitled to cross examine Schooler as to this issue, and the motion for mistrial was properly denied. *See e.g. Hicks v. State* (1987), Ind., 510 N.E.2d 676 (scope of permissible cross-examination extends to subject matter covered in direct examination).

ISSUE THREE—Was the evidence sufficient to support Stewart's conviction?

PARTIES' CONTENTIONS—Stewart asserts the State failed to demonstrate he compelled Schooler by force or imminent threat of force. The State maintains that the evidence was sufficient.

CONCLUSION—The evidence was sufficient.

Applying our well-known standard of review, the evidence was sufficient. We reject Stewart's argument that the State failed to prove that he compelled Schooler to have sexual intercourse by force or imminent threat of force.

Our supreme court has determined that the force necessary to sustain a rape conviction need not be physical. It may be constructive or implied from the circumstances. *Smith v. State* (1986), Ind., 500 N.E.2d 190. Force or threat of force may be shown even without evidence of the attacker's oral statement of intent, if from the circumstances, it is reasonable to infer that the attacker was willing to do so. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, *cert. denied,* 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284.

At trial, the evidence demonstrated that Stewart locked his office door as Schooler looked at his pictures. Stewart then lifted her onto his desk and began kissing her. *Record* at 208, 230–31. Schooler told Stewart to "get away" from her and she attempted to resist. *Record* at 231–32. While Schooler continued to struggle, Stewart held her wrist, pushed her onto a couch, and had sexual intercourse with her. *Record* at 233–34.

The evidence presented at trial clearly demonstrated that Stewart forced Schooler to have sex with him. *See Ives v. State* (1981), Ind., 418 N.E.2d 220; *Jenkins v. State* (1978), 267 Ind. 543, 372 N.E.2d 166.

Judgment affirmed.

SHIELDS and ROBERTSON, JJ., concur.